# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-09-00682-CV
---

**Austin ISD, Self-Insured, Appellant**

**v.**

**Charles M. Manbeck, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001386, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING
---

## O P I N I O N

This cause originated as a suit for judicial review brought by a self-insured governmental entity—the Austin Independent School District (AISD), appellant—from a final decision and order of the Texas Department of Insurance Division of Workers' Compensation (the Division) in an extent-of-injury dispute under the Workers' Compensation Act. The claimant, Charles M. Manbeck, appellee, filed a counterclaim seeking attorneys' fees under section 408.221, subsection (c), of the Labor Code. Subsequently, AISD non-suited its judicial-review claim, and the parties proceeded to jury trial solely on Manbeck's attorneys'-fees counterclaim. Based on the jury's findings, the district court awarded Manbeck $36,000 for trial-level attorneys' fees incurred up to the time of AISD's non-suit, an additional $17,415 for trial-level attorneys' fees incurred after the non-suit, plus contingent appellate attorneys' fees.

In two issues on appeal, AISD argues that the district court erred in its judgment because (1) Labor Code section 408.221, subsection (c), does not authorize workers' compensation claimants to recover "fees for fees"—attorneys' fees incurred solely to recover any attorneys' fees otherwise authorized by that provision—and thus did not authorize recovery of the fees Manbeck incurred after AISD non-suited its judicial review claim; and (2) the evidence was legally and factually insufficient to support the jury's award of the attorneys' fees that Manbeck was found to have incurred before AISD non-suited its claim. We agree with AISD's former contention but not the latter. Consequently, we will affirm the district court's judgment awarding Manbeck $36,000 for trial-level attorneys' fees incurred up to the time of AISD's non-suit, but reverse and render judgment that Manbeck take nothing on his claim for fees incurred after the non-suit.

## BACKGROUND

Appellant AISD is a self-insured governmental entity under the Workers' Compensation Act. Appellee Manbeck was employed by AISD at relevant times. In March 2004, while on the job, Manbeck was tightening a door closer when his right shoulder popped and his hand went numb. Following the incident, Manbeck obtained medical treatment which, he claimed, aggravated a preexisting condition in his lower back. He was ultimately diagnosed with injuries both to his right shoulder—"impingement syndrome right shoulder with subacromial tendonitis and acrominoclavicular joint arthritis"—and to his lower back—"ruptured intervertebral disc post-lumbar diskectomy with repeat lumbar fusion." Although acknowledging that Manbeck had suffered a compensable injury to the extent of a sprain or strain to his right shoulder, AISD disputed whether

2

the compensable injury extended to his back or included the additional right shoulder maladies with which he had been diagnosed.

After a benefit review conference that failed to resolve the dispute, *see generally* Tex. Lab. Code Ann. §§ 410.021-.34 (West 2006), AISD and Manbeck proceeded to a benefits contested case hearing before a Division hearing officer. *See id.* § 410.151 (West 2006). The decision and order reflects that the following "disputed issue" was presented for decision:

> Does the compensable injury of 03/30/04 extend to include: 1) ruptured intervertebral disc post-lumbar disketomy with repeat lumbar fusion and/or 2) impingement syndrome right shoulder with subacromial tendonitis and acrominoclavicular joint arthritis?

The hearing officer found that both of Manbeck's conditions "arose out of or naturally flowed from" the compensable injury and that the compensable injury was "a producing cause" of both conditions. The officer rendered a decision that Manbeck's compensable injury extended to both conditions, and ordered AISD to pay benefits in accordance with that decision. *See id.* § 410.168(a) (West 2006).

AISD unsuccessfully sought review before the Division's appeals panel, which had the effect of making the hearing officer's decision and order final. *See id.* § 410.204(c) (West 2006). Having exhausted its administrative remedies, AISD timely brought suit for judicial review of the Division's order in April 2006. *See id.* § 410.251 (West 2006). In its petition, AISD complained solely of the Division's decision regarding the extent-of-injury dispute, and it attached a copy of the hearing officer's final decision and order. *See id.* § 410.302(b) (West 2006) ("A trial under this subchapter [G] is limited to issues decided by the appeals panel and on which judicial review is

3

sought" and "[t]he pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.").

Although Manbeck was served with process shortly thereafter, he did not file an answer until after AISD sought a no-answer default judgment in January 2007. At that juncture, Manbeck retained two lawyers—Chadwick Lee, who had represented him before the Division; and Wade Stewart. Stewart and Lee filed an answer containing a general denial and a prayer for attorneys' fees. The parties subsequently exchanged written discovery. In June 2008, Manbeck filed a supplemental answer with a counterclaim for attorneys' fees that specifically invoked section 408.221, subsection (c), of the Labor Code. *See id.* § 408.221(c) (West 2006).

Ultimately, in December 2008, AISD non-suited its claim for judicial review of the Division's decision and order, leaving pending only Manbeck's counterclaim for attorneys' fees. The case proceeded toward trial on that claim alone. Shortly before trial, Manbeck retained a third attorney, Brad McClellan, who was also designated as an expert witness on attorneys' fees.

Manbeck's attorneys'-fees counterclaim was tried to a jury in June 2009. Manbeck presented three witnesses—Lee, Stewart, and McClellan—and AISD presented the testimony of its trial counsel, Ronald M. Johnson. Following the presentation of evidence, the district court submitted a single question to the jury inquiring as to the amount of a reasonable fee for the necessary services of Manbeck's attorneys for each of (1) preparation and trial at the district court level until the date of AISD's non-suit, December 12, 2008; (2) preparation and trial at the district court level after December 12, 2008; (3) an appeal to this Court; and (4) an appeal to the Supreme Court of Texas. The jury found that a reasonable fee for necessary trial-level services of

Manbeck's attorneys prior to AISD's non-suit was $36,000, that such a fee for his attorneys' trial-level services thereafter was $17,415, and that such a fee for appellate-level services was $38,000 in the event of an appeal to this Court and another $38,000 for an appeal to the supreme court. The district court rendered judgment consistent with the jury's findings. After its motion to modify the judgment or for new trial was overruled by operation of law, AISD perfected this appeal.

## ANALYSIS

In its second issue on appeal, AISD argues that the district court erred in awarding Manbeck attorneys' fees that he incurred after it non-suited its judicial-review claim because the non-suit left his attorneys'-fees counterclaim as the sole pending claim and Labor Code section 408.221, subsection (c), does not authorize workers' compensation claimants to recover "fees for fees"—attorneys' fees incurred solely to recover the attorneys' fees otherwise authorized under that provision. In its first issue on appeal, AISD urges that Manbeck failed to present legally or factually sufficient evidence to support the jury's finding that he incurred $36,000 in reasonable and necessary trial-level attorneys' fees prior to AISD's non-suit.

**Fees for fees**

Our analysis of AISD's second issue begins with the established principle—so well established, in fact, that it's long been termed the "American Rule"—that parties to litigation must bear their own attorneys' fees and cannot recover them from the opposing party unless specifically authorized by statute or contract. *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11

5

(Tex. 2006)) ("Texas has long followed the 'American Rule' prohibiting [attorneys'] fee awards unless specifically provided by contract or statute."). Manbeck's attorneys' fee awards in this case are each predicated on section 408.221 of the Labor Code, and AISD's contentions require us to construe that provision.

Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *See id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We also presume that the Legislature was aware of the background law and acted with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). We further presume that the Legislature selected statutory words, phrases, and expressions deliberately and purposefully. *See*

*Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Shook v. Walden*, 304 S.W.3d 910, 917 (Tex. App.—Austin 2010, no pet.). Our analysis of the statutory text may also be informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, "common law or former statutory provisions, including laws on the same or similar subjects," "consequences of a particular construction," and the enactment's "title." *Id.* § 311.023(1)-(5), (7) (West 2005). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc*., 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

Labor Code section 408.221 regulates the award of attorneys' fees to counsel who represent claimants before the Division or a court in disputes under the Workers' Compensation Act. *See* Tex. Lab. Code Ann. § 408.221 (West 2006). Among other regulations and restrictions, section 408.221 generally requires that any fees paid by a claimant to his counsel for representation before the Division or a court must come out of the claimant's recovery, *see id.* § 408.221(b), caps such fees at twenty-five percent of that recovery, *see id.* § 408.221(i), and requires that the Division or court (as applicable) approve such fees, *see id.* § 408.221(a), considering the factors listed in subsection (d) of section 408.221. *See id.* § 408.221(d). Those factors are:

(1)     the time and labor required;

(2)     the novelty and difficulty of the questions involved;

7

(3)     the skill required to perform the legal services properly;

(4)     the fee customarily charged in the locality for similar legal services;

(5)     the amount involved in the controversy;

(6)     the benefits to the claimant that the attorney is responsible for securing; and

(7)     the experience and ability of the attorney performing the services.

*Id*.; *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing each of these factors within broader list of "[f]actors that a factfinder should consider when determining the reasonableness of a fee" generally).

However, subsection (c) of section 408.221 contains a fee-shifting provision whereby claimants may recover additional attorneys' fees from insurance carriers in certain circumstances. Subsection (c) provides, in relevant part:

> An insurance carrier that seeks judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits is liable for reasonable and necessary attorney's fees as provided by Subsection (d) incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302. If the carrier appeals multiple issues and the claimant prevails on some, but not all, of the issues appealed, the court shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails. In making that apportionment, the court shall consider the factors prescribed by Subsection (d).

*Id.* § 408.221(c). The provisions of subsection (c) that are directly applicable to this case appear in its rather lengthy first sentence, which can be restated for clarity as follows:

8

(1)     If "[a]n insurance carrier . . . seeks judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits,"

(2)     such a carrier "is liable for reasonable and necessary attorney's fees as provided by Subsection (d) [that are] incurred by the claimant as a result of the insurance carrier's appeal"

(3)     "if the claimant prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302."

There is no dispute that AISD, as a self-insured governmental entity, is an "insurance carrier" for purposes of subsection (c)[1] and that it sought "judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits." Consequently, the first set of requirements listed above is satisfied.

AISD likewise acknowledges that Manbeck "prevailed" on "an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302," thereby satisfying the third set of requirements listed above. The "limitation of issues contained in Section 410.302" refers to the requirements in Labor Code section 410.302 that "[a] trial under this subchapter [G] is limited to issues decided by the appeals panel and on which judicial review is sought" and that "[t]he pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved." *Id.* § 410.302(b). Here, the "issue on which judicial relief [was] sought by [AISD] in accordance with the limitation of issues contained in Section 410.302" was the extent-of-injury dispute that had been the focus of the

---

[1]  *See* Tex. Lab. Code Ann. § 401.011(27) (West 2006).

9

Division's decision and AISD's petition. There appears to be no dispute that Manbeck "prevailed" on that issue, within the meaning of section 408.221, subsection (c), inasmuch as AISD's non-suit had the effect of placing the parties in the same legal position with respect to that issue as if Manbeck had won on that issue at trial. *See, e.g.*, *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 767-69 (Tex. App.—Dallas 2007, pet. denied).[2]

AISD instead focuses its contentions on the second set of requirements listed above. It argues that any attorneys' fees Manbeck incurred after it non-suited its judicial-review claim could not have been "incurred by the claimant as a result of the insurance carrier's appeal" within the meaning of section 408.221, subsection (c). AISD urges that subsection (c) contemplates that the attorneys' fees a claimant incurs "as a result of the insurance carrier's appeal" are only those it incurs in prevailing on "an issue on which judicial review is sought by the insurance carrier." *See* Tex. Lab. Code Ann. § 408.221(c). Once it non-suited its judicial-review claim, AISD observes, the sole issue that remained for judicial resolution was Manbeck's counterclaim for attorneys' fees under section 408.221, subsection (c). Whether Manbeck was entitled to attorneys' fees under the provision, AISD reasons, was not in itself an "issue on which judicial review [was] sought by [AISD]," so none of the fees he incurred in pursuing that claim would "result from" AISD's appeal. AISD disputes, in other words, whether subsection (c) authorizes recovery of attorneys' fees that a claimant incurs in recovering the attorneys' fees he incurs in prevailing on "issue[s] on which judicial review is sought by the insurance carrier."

---

[2] Nor does AISD dispute that Manbeck's attorneys' fee counterclaim survived its non-suit. *See Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 768 (Tex. App.—Dallas 2007, pet. denied).

In response, Manbeck argues that the phrase "an issue on which judicial relief is sought by [AISD]" (in the third set of requirements listed above) included not only the grounds raised in AISD's suit, but his claim for attorneys' fees under subsection (c). He urges that his ultimate entitlement to attorneys' fees under subsection (c) was necessarily "an issue on which judicial relief is sought by [AISD]" both at the time of filing, because AISD's act of filing its suit implicated that statute's fee-shifting regime, and as the case progressed. But Manbeck's proposed construction of "issue on which judicial review is sought" overlooks the remainder of the sentence in which that phrase appears—"an issue on which judicial review is sought by the insurance carrier *in accordance with the limitation of issues contained in Section 410.302*." By explicitly tying "issue on which judicial review is sought" to the specific procedural framework of section 410.302, the Legislature evidenced its intent to define or limit such "issues" to those identified through section 410.302's "limitation of issues." Consequently, the "issue on which judicial relief [was] sought by [AISD] in accordance with the limitation of issues contained in Section 410.302," as previously indicated, was the parties' extent-of-injury dispute, and could not include any future or potential claim or dispute regarding Manbeck's entitlement to attorneys' fees under subsection (c).

Manbeck also disputes that the "reasonable and necessary attorney's fees . . . incurred by the claimant *as a result of the insurance carrier's appeal*" (in the second set of requirements listed above) are limited or linked solely to those incurred in prevailing on the "issue[s] on which judicial review is sought by the insurance carrier" (in the third set of requirements). In Manbeck's view, the phrase "*if* the claimant prevails on an issue on which judicial review is sought" is the predicate for the award of attorneys' fees under subsection (c), while "reasonable and necessary

11

attorney's fees . . . incurred by the claimant as a result of the insurance carrier's appeal" describes the fees that may be awarded once that predicate is met.  And fees "incurred . . . as a result of the insurance carrier's appeal," Manbeck further suggests, denotes any that can be said to "result from" the carrier's suit, which would extend beyond those the claimant incurs in prevailing on the carrier's issues to include those incurred in litigating the claimant's entitlement to attorneys' fees. In further support of that concept, Manbeck cites Texas cases that have construed chapter 38 of the Civil Practice and Remedies Code to allow recovery of attorneys' fees incurred in disputes over a party's entitlement to attorneys' fees under the statute,[3] as well as a number of federal cases approving similar awards of "fees for fees" under the U.S. Code.[4]

Although the structure and wording of subsection (c)'s first sentence might otherwise present a close question as to whether the Legislature intended to limit claimants' attorneys' fee recoveries solely to those incurred in prevailing on issues appealed by the carrier, we believe the provision's second sentence plainly answers that question.  In the second sentence, as previously noted, the Legislature provided:

> If the carrier appeals multiple issues and the claimant prevails on some, but not all, of the issues appealed, the court shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails.  In making that apportionment, the court shall consider the factors prescribed by Subsection (d).

---

[3]  *See, e.g.*, *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied).

[4]  *See, e.g.*, *INS v. Jean*, 496 U.S. 154, 163-64 (1990) (allowing recovery of fees for fees under 28 U.S.C. § 2412(d)(1)(A) (2011)).

Tex. Lab. Code Ann. § 408.221(c). The "issues" that a carrier would "appeal" under the meaning of subsection (c), as previously suggested, would not include a claimant's ultimate entitlement to attorneys' fees under that provision. Thus, by limiting claimants' entitlement to attorneys' fees solely to those incurred in connection with the "issues" "appealed" by the carrier on which the claimant prevailed, the Legislature in the second sentence of subsection (c) necessarily precluded the award of attorneys' fees incurred by claimants solely in pursuit of fees otherwise authorized by that provision. And this language, furthermore, sheds light on the nature of "fees . . . incurred by the claimant as a result of the insurance carrier's appeal" that the Legislature contemplated in subsection (c)'s first sentence. Reading subsection (c) as a whole, we conclude that the Legislature necessarily intended to authorize claimants to recover attorneys' fees incurred in prevailing on the issues on which the carrier sought judicial review, but not fees incurred in pursuit of those fees. *See Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2007) ("We determine legislative intent from the statute as a whole and not from isolated portions."); *see also Vega-Garcia*, 223 S.W.3d at 769-70.

Manbeck suggests that this construction of subsection (c) yields an absurdity that the Legislature could not possibly have intended. Unless carriers are held liable for the attorneys' fees claimants expend in litigating their entitlement to attorneys' fees under subsection (c), Manbeck insists, carriers will have incentives to delay and obstruct claimants' recoveries of those fees to run up claimant's legal expenses, reduce or eliminate the value of their potential fee recovery, and gain coercive settlement leverage. Such a result, Manbeck complains, would subvert the Legislature's manifest intent in subsection (c) to award attorneys' fees to claimants when carriers seek judicial

13

review and lose.  We cannot agree that any potential for the sharp tactics Manbeck decries belies the legislative intent we have ascertained from the words the Legislature has chosen.  Although we should not lightly presume that the Legislature has done a useless act, *see DeQueen*, 325 S.W.3d at 637, our construction of subsection (c) plainly does not deprive it of any effect or operation—and, in any event, the statutory text controls.  *See id.* at 638.  Nor can we assume that the Legislature did not intend to balance the respective interests of claimants, carriers, and employers in precisely this way.  *See Mid-Century Ins. Co. v. Texas Workers' Comp. Comm'n*, 187 S.W.3d 754, 758 (Tex. App.—Austin 2006, no pet.) (citing *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 521 (Tex. 1995) (observing that "the legislature . . . carefully balanced the competing interests of injured employees, employers, and insurance carriers in an attempt to create a viable compensation system, all within constitutional limitations").  A primary legislative goal underlying the 1989 Workers' Compensation Act was to reduce the costs and inefficiencies of litigation as a means of resolving disputes in the workers' compensation system.  *See Garcia*, 893 S.W.2d at 512-13, 515, 533 (describing how Legislature sought to reduce delay and costs associated with de novo trials under prior act through, among other things, greater reliance on administrative proceedings and stronger regulation of attorneys' fee awards); *see also Transcontinental Ins. Co. v. Crump*, No. 09-0005, 53 Tex. Sup. J. 1124, 2010 Tex. LEXIS 616 at *58-59 n.2 (Tex. Aug. 27, 2010) (Johnson, J., concurring) ("The 1989 reformation of the Texas workers' compensation system attempted to minimize controversy and litigation, in part by instituting a multi-level administrative dispute resolution.").  Especially given this policy context, it is not inconceivable that the Legislature intended to strike a balance in subsection (c) by granting claimants a limited ability to recover fees

incurred in defeating carrier's suits for judicial review, thereby indemnifying them to some extent and deterring carriers somewhat from pursuing suits that lack merit, while also attempting to limit incentives for claimants or their lawyers to pursue protracted satellite litigation over attorneys' fees. We conclude that Manbeck's complaints about potential litigation tactics by carriers ultimately lie with the policy choices the Legislature has made in subsection (c), and are properly directed to that branch of government rather than the judiciary. *See DeQueen*, 325 S.W.3d at 640 ("But when the language of a statute is clear, it is not the judicial prerogative to go behind or around that language through the guise of construing it to reach what the parties or we might believe is a better result."); *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) ("Courts . . . must take statutes as they find them. . . . They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law . . . .").

We also observe that three of our sister courts have previously addressed similar issues concerning the proper construction of subsection (c), and two have reached the same conclusions as we do. In *Twin City Fire Insurance Co. v. Vega-Garcia*, the Fifth Court of Appeals determined that subsection (c) "clearly limits recovery of attorney's fees to those fees incurred . . . in prevailing on the issue on which judicial review was sought" and thereby does not authorize the award of fees incurred in pursuing fees. 223 S.W.3d at 769. The Fourth Court of Appeals subsequently followed the reasoning of *Vega-Garcia* and held that "the 'as a result of' language used in section 408.221(c) requires the attorney's fees to have been incurred on judicial review of an issue on which the claimant prevailed." *Discover Prop. & Cas. Ins. Co. v. Tate*, 298 S.W.3d 249, 260 (Tex. App.—San Antonio 2009, pet. denied). In the third case, the Fourteenth Court of Appeals

reasoned that "if the claimant successfully performs the predicate—prevailing on an issue on which the carrier sought judicial review—the claimant is entitled to attorney's fees incurred as a result of the appeal"—and that attorney's fees incurred in pursuing an attorney's fee claim under subsection (c), in the court's view, were "a result of the appeal." *Transcontinental Ins. Co. v. Crump*, 274 S.W.3d 86, 104 (Tex. App.—Houston [14th Dist.] 2008), *rev'd on other grounds*, No. 09-0005, 53 Tex. Sup. J. 1124, 2010 Tex. LEXIS 616 (Tex. Aug. 27, 2010). The court distinguished *Vega-Garcia* on the basis that "the insurance carrier non-suited its judicial review proceeding." *Id.* We agree with the subsequent observation in *Tate* (which did not involve a carrier non-suit) that *Crump*'s proposed distinction based on whether the carrier had non-suited ultimately fails and that *Crump* is logically inconsistent with both *Tate* and *Vega-Garcia*. For reasons we have explained, however, we find the reasoning of *Tate* and *Vega-Garcia* more persuasive.

While the Workers' Compensation Act is to be "liberally construed" in favor of the injured worker, *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000), a statutory award of attorneys' fees—a departure from the established "American Rule"—"'may not be supplied by implication but must be provided for by the express terms of the statute in question.'" *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999) (quoting *First City Bank-Farmers Branch v. Guex*, 677 S.W.2d 25, 30 (Tex. 1984)). Although subsection (c) of Labor Code section 408.221 expressly authorizes awards of attorneys' fees that workers' compensation claimants incur in prevailing on issues on which carriers have sought judicial review, it does not authorize the award of fees incurred solely in pursuing the fees themselves. Because AISD's non-suit of its judicial-review claim left Manbeck's counterclaim for attorneys' fees as the sole remaining issue in the case, subsection (c) did not

16

authorize an award for the attorneys' fees Manbeck incurred from that point forward. We sustain AISD's second issue.

**Attorneys' fees incurred prior to non-suit**

AISD's first issue concedes that subsection (c) of Labor Code section 408.221 would entitle Manbeck to "reasonable and necessary attorney's fees as provided by Subsection (d)" that he incurred in the district court prior to AISD's non-suit. AISD disputes, however, that Manbeck presented either legally or factually sufficient evidence to support the jury's finding that he incurred $36,000 in such fees.

To establish the amount of attorneys' fees he incurred in the district court prior to AISD's non-suit, Manbeck relied on testimony and documentary evidence concerning services provided by two of his three attorneys, Lee and Stewart. The third, McClellan, was not retained until after AISD's non-suit, although he offered expert opinions regarding the reasonableness and necessity of Lee and Stewart's fees. Lee had represented Manbeck in his proceedings before the Division, and was retained again, along with Stewart, in early 2007. Manbeck presented evidence that, prior to the non-suit, Lee billed for 21.25 hours of work at an hourly rate of $300 ($6,375 total) and that Stewart billed for 90.25 hours at an hourly rate of $350 ($31,587.50 total), plus $1,523 in expenses, for an aggregate total of $39,485.50, an amount that exceeded the $36,000 that the jury ultimately awarded.

In contending that the evidence was legally and factually insufficient to support the award of attorneys' fees for Lee's services, AISD focuses on evidence that Lee billed in quarter-hour increments, a practice that could have resulted in Lee "rounding up" individual charges by as much

17

as fourteen minutes each. It asserts that Lee may have done precisely this on as many as eighteen occasions, potentially resulting in up to $1,260 in fees being charged for minutes in which Lee did not actually provide services.[5] AISD also takes issue with Lee's $300 hourly rate, emphasizing that the rate was twice the $150/hr rate Lee had charged Manbeck for Lee's services in the administrative proceedings. AISD questions the reasonableness and necessity of the higher rate given that (1) Lee, whom the evidence reflects was a sixteen-year lawyer with a practice focused on the administrative aspects of workers' compensation claims, brought in Stewart to assist with the trial and discovery aspects of the case, (2) once in the district court, Manbeck enjoyed advantages that he did not possess at the administrative level, including AISD bearing the burden of proof[6] and the ability to make the fact-finder aware of his favorable outcome before the Division.[7]

As for Stewart, AISD points to what it contends are three occasions in which he billed for "unnecessary" travel between his office in Houston and Austin to meet face-to-face with Manbeck (totaling $5,250) and a fourth trip in which he met with a doctor ($1,400). AISD questions the necessity of these face-to-face meetings given Lee's continued involvement in the case, "the convenience of communications by telephone or over the internet," and that neither depositions nor trial had been scheduled at the time. AISD also chides Stewart, a board-certified personal injury attorney, for billing $350 per hour for tasks that, in AISD's view, were more appropriate for a paralegal or secretary to perform, such as typing or sending pleadings or discovery requests. It also

---

[5]  14 minutes x 18 = 252 minutes, which is 4.2 hours, x $300/hr.= $1,260.

[6]  *See* Tex. Lab. Code Ann. § 410.303 (West 2006).

[7]  *See id.* §§ 410.304, .306(b) (West 2006).

18

criticizes the amount of time Stewart attributed to such tasks. For example, AISD complains that Stewart billed 1.0 for drafting a request for disclosure and a total of 2.5 hours for drafting and forwarding Manbeck's answers and counterclaim. AISD specifically identifies a total of $3,080 of Stewart's fees that it believes should have been performed by someone else for less money.

A party challenging the legal sufficiency of the evidence supporting an adverse finding on an issue on which an opposing party has the burden of proof will prevail if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W3d 802, 810 (Tex. 2005); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'would enable reasonable and fair-minded people to differ in their conclusions.'" *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (internal quotes omitted)). But if the evidence is so weak that it does no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995).

When conducting a legal-sufficiency review, we view the evidence in the light most favorable to the trial court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807. We indulge every reasonable inference that would support the trial court's findings. *Id.*

at 822. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

When reviewing a jury verdict to determine the factual sufficiency of the evidence, courts must consider and weigh all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

As the Texas Supreme Court has continued to emphasize, "[i]n general, the reasonableness of statutory attorney's fees is a jury question." *Crump*, 2010 Tex. LEXIS 616 at *54 (quoting *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000) (internal quotation marks omitted)). The charge instructed the jury that, when determining the amount of "a reasonable fee for the necessary services" of Manbeck's attorneys, it was to consider seven factors that precisely tracked those listed in subsection (d) of section 408.221. Consequently, to determine whether legally and factually sufficient evidence supported the award of pre-non-suit attorneys' fees, we must evaluate the evidence in light of those seven factors. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003) (charge as submitted is generally "starting point" for factual-sufficiency review); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (same is true for legal-sufficiency review). However, the ultimate inquiry is whether the fees awarded were reasonable and necessary. *See* Tex. Lab. Code Ann.§ 408.221(c); *Arthur Andersen*, 945 S.W.2d at 818-19; *see also Tate*, 298 S.W.3d at 255-56.

20

### *Experience and ability of the attorneys*

AISD does not appear to question that both Lee and Stewart are experienced and able attorneys. Lee testified that he has been licensed to practice in Texas for sixteen years, and that his practice has been devoted primarily to workers' compensation cases for at least thirteen years, the last ten of which have been in Austin. He further indicated that he has handled over 1,000 workers' compensation claims, mostly at the administrative level. Stewart testified that he has been licensed as an attorney for over twenty years, is board certified in personal injury law, and had tried seven workers' compensation cases in Travis County. Although Stewart acknowledged that he was not board certified in workers' compensation law, he explained that he was ineligible at the present time because he had served on that specialty's original exam commission and for a few years helped write the exam.

### **The fee customarily charged in the locality for similar legal services**

The jury heard conflicting evidence regarding the reasonable hourly rate charged by workers' compensation attorneys preparing cases for trial in district court. AISD's trial counsel, Johnson, testified that the reasonable hourly rate for workers' compensation attorneys was between $100 and $250 per hour, based on his experience in the field and what he knew about other attorneys handling workers' compensation claims.[8] However, he acknowledged that he had never heard of an attorney billing at less than $250 for work in district court. Manbeck, by contrast, presented evidence that the average billing rate for attorney shareholders in Austin in 2008 was $329 per hour,

---

[8] Johnson did not, however, purport to testify as an expert, as he had not been designated as one.

21

and that rates near or in excess of the average were customarily charged in litigating workers' compensation claims in district court. McClellan added that, in fact, some defense attorneys charge over $500 per hour. As noted, Lee billed his time at a rate of $300 per hour and Stewart at $350 per hour.

### *Novelty and difficulty of the questions involved*

The jury also heard conflicting evidence regarding the relative novelty and difficulty of the questions presented by the extent-of-injury dispute. While AISD's Johnson dismissed the dispute as "a plain vanilla Workers' Comp case," Manbeck's witnesses depicted it as involving complex or unique medical and legal issues. Lee and Stewart testified that the extent-of-injury issues in this case were complicated by the fact that, in addition to seeking compensation for his initial shoulder injury, Manbeck sought coverage for injuries—right shoulder impingement syndrome and intervertebral disc damage—incurred while he was receiving physical therapy for his shoulder. Stewart testified that he had to find and retain two experts with different specialties, one to discuss the additional damage to Manbeck's shoulder and another doctor to testify regarding the aggravation of Manbeck's back injury.

### *The skill required to perform the legal services properly*

Similarly, the jury heard competing contentions regarding the relative skill level required of Manbeck's attorneys to prevail. AISD emphasized the procedural advantages that Manbeck possessed in the district court and that, unlike the typical personal injury case, Manbeck would not be required to prove damages, per se. Johnson also maintained essentially that

22

because Stewart was well qualified, no other attorneys needed to be working on the case. In addition to evidence concerning the relative complexity of the legal issues presented, Manbeck presented evidence that while Lee and Stewart were each imminently qualified to handle workers' compensation cases, the two complemented each other, with Stewart contributing his more extensive experience and skills in district court litigation and Lee continuing to assist with certain tasks so as to reduce Stewart's overall work load.

### Amount in controversy and benefits secured for the claimant

AISD boldly claims that "there is no evidence in this record that Manbeck's attorneys secured any benefit for him as the result of this litigation." Manbeck responds that his attorneys secured benefits that included preventing AISD from obtaining a default judgment against him and by guaranteeing that AISD would be liable for any future reasonable and necessary medical care for Manbeck's compensable injury, which extended to include the right shoulder impingement and lumbar injury. Manbeck's attorneys testified to these benefits, and Lee testified without objection that Manbeck was likely to have problems with his back in the future. AISD did not present contrary evidence, although it downplays such future benefits as merely "theoretical."

### Time and labor required

AISD's complaints regarding Lee and Stewart's billings, as previously summarized, are addressed primarily to the "time and labor required" factor. In response to AISD's contentions regarding his "doubled" hourly rate, Lee explained that the $150 per hour rate he charges for representation before the Division is a function of Labor Code section 408.221's cap on

attorneys' fees to twenty-five percent of a plaintiff's recovery. As for the possibility that Lee's billing in fifteen-minute increments resulted in some "overcharges," AISD refers us to no authority holding that billing by this method renders the ultimate fee charged per se unreasonable. *See Lewallen v. City of Beaumont*, No. 1:05-CV-733-TH, 2009 U.S. Dist. LEXIS 62503 at *13 (E.D. Tex. July 20, 2009) (where defendant challenged use of fifteen-minute billing increments, observing that no federal or local rule disallowed them and that the ultimate inquiry remains whether the fees are reasonable), *aff'd in part and rev'd and rendered in part on other grounds*, No. 09-40337 c/w 09-4082, 2010 U.S. App. LEXIS 17613 (5th Cir. Aug. 23, 2010). And, with respect to Lee's having continued to participate in the representation, Lee testified that his rapport with Manbeck and familiarity with what transpired at the administrative level made it reasonable for him to remain on the case and review the pleadings and discovery.

More generally, we conclude that AISD's complaints with Lee and Stewart's charges are of a nature and concern amounts that, when considered in the context of the foregoing evidence and section 408.221, subsection (d)'s factors as a whole, go to the weight of the evidence regarding a reasonable amount of time to bill or a reasonable rate to charge—and, as such, are matters for the jury to decide. *See Priestwood v. Settle*, No. 03-07-00111-CV, 2008 Tex. App. LEXIS 1458 at *22-23 (Tex. App.—Austin 2008, pet. denied). We also observe that Stewart and McClellan opined that both Lee and Stewart's time and labor was reasonable. In sum, we cannot conclude that no reasonable fact finder could have found that Manbeck incurred at least $36,000 in reasonable fees for the necessary services of Lee and Stewart prior to AISD's non-suit, nor can we conclude the amount of the award is so contrary to the overwhelming weight of the evidence as to be clearly

wrong and manifestly unjust. *Cf. Dean Foods Co. v. Anderson*, 178 S.W.3d 449, 456 (Tex. App.—Amarillo 2005, pet. denied) (awarding claimant $100,167.86 in attorneys' fees where carrier non-suited its claims one year after filing suit for judicial review challenging Commission's finding of compensable injury); *Texas Mut. Ins. Co. v. Durst*, No. 04-07-00862-CV, 2009 Tex. App. LEXIS 1266 at *14 (Tex. App.—San Antonio Feb. 25, 2009, no pet.) (awarding $160,000 in attorneys' fees for trial on merits where five attorneys charged from $235 per hour to $395 per hour). Accordingly, we overrule the AISD's first issue.

## CONCLUSION

Because they lack either a statutory or contractual basis, we must reverse the district court's judgment award of $17,415 for attorneys' fees Manbeck incurred at the trial level following AISD's non-suit, as well as its awards of contingent appellate attorneys' fees, and render judgment that Manbeck take nothing on those claims. However, having concluded that Manbeck presented legally and factually sufficient evidence to support an award of $36,000 for the reasonable and necessary trial-level attorneys' fees he incurred prior to AISD's non-suit, we affirm the judgment award of those fees.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed in part; Reversed and Rendered in part

Filed:   March 23, 2011